UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| F.J.C.G., | ) |
|               Petitioner, | ) |
| v. | ) No. 25 C 4107 |
| MICHAEL J. SMITH, in his official capacity as Warden of the Broadview Processing Center, *et al.*, | ) Judge Gettleman |
|               Respondents. | ) |

**RESPONDENTS' MEMORANDUM IN
OPPOSITION TO PETITIONER'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Petitioner F.J.C.G. has filed a habeas corpus petition asking for this court to, *inter alia*, compel the respondents to release him from custody and "prohibit[ ] Respondents from removing Petitioner from the jurisdiction of the Chicago Immigration Court and from the United States. Dkt. 1 ("Petition" or "Pet.") at 12 (Prayer for Relief). To that end, petitioner has also filed a motion for both a temporary restraining order ("TRO") and a preliminary injunction to enjoin:

> (1) any removal outside the country pursuant to the Alien Enemies Act ("AEA"), (2) any transfer out of the Northern District of Illinois, and (3) notice to Petitioner, as well as undersigned counsel, of any designation of an Alien Enemy under the Proclamation issued by the White House [sic] on March 15, 2025 regarding the "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua," with at least 30 days' notice prior to any removal under the Proclamation.

Dkt. 7 at 1–2; *see also* Dkt. 7-1 ("Pet'r Mot.") at 1 (similar). But for decades, it has been the law within the Seventh Circuit that the appropriate respondent to a petition for habeas corpus is the petitioner's *immediate* custodian. *See Kholyavskiy v. Achim*, 443 F.3d 946, 953 (7th Cir. 2006); *see also Asolo v. Prim*, No. 21 C 50059, 2021 WL 3472635, at *2 n.1 (N.D. Ill. Aug. 6, 2021).

The petition here names four persons as respondents (the Warden of the Broadview Processing Center, U.S. Immigration and Customs Enforcement's ("ICE") Director of its Chicago Field Office, the Secretary of Homeland Security, and the Attorney General), but none is petitioner's immediate custodian. Nor were *any* of the respondents his immediate custodian when the Petition was filed on April 15, 2025. *See* Dkt. 1. Instead, F.J.C.G. "was transferred to Bluebonnet Detention Facility" on that date.[1] *See* Declaration of Keith Taylor Jr. ("Taylor Decl.") at ¶ 6. This is critical for this court's jurisdictional analysis in habeas litigation—both under Seventh Circuit case law and a more recent Supreme Court opinion decided in a nearly *identical* context. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025) (per curiam) ("For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.' The detainees are confined in Texas, so venue is improper in the District of Columbia. As a result, the Government is likely to succeed on the merits of this action." (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004))). There is no reason this case should be treated differently.

Rather than granting petitioner's motion, this court must dismiss this action for lack of jurisdiction. *See, e.g.*, *Yacobo v. Achim*, No. 06 C 2432, 2007 WL 1238918, at *3 (N.D. Ill. Apr. 27, 2007) ("Since Respondents Bond and Achim are improper for purposes of this petition, Petitioners failed to name a proper custodian. As such, this Court lacks jurisdiction over the habeas

---

[1] The Bluebonnet Detention Facility is located within the Northern District of Texas. *See* ICE, *Bluebonnet Detention Facility*, https://www.ice.gov/detain/detention-facilities/bluebonnet-detention-facility (last accessed on May 13, 2025). This court may take judicial notice of the location of ICE's Bluebonnet Detention Facility in Anson, Texas. *See, e.g.*, *Michigan v. U.S. Army Corps of Eng'rs*, 758 F.3d 892, 899 (7th Cir. 2014) (taking judicial notice of official government reports). In fact, judicial notice is appropriate regarding the geographic locations of such government offices. *Cf. United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980) (noting how "[g]eography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial and thus it is within the general definition contained in Fed. R. Evid. 201(b)").

petition."). Alternatively, the court should transfer the petition to the United States District Court for the Northern District of Texas (the district where F.J.C.G. is currently confined, and *was* confined on the day his Petition was filed) under 28 U.S.C. § 1406(a). *See, e.g.*, *da Fonseca v. Emmel*, No. 23 C 4405, 2023 WL 7220558, at *2–3 (N.D. Ill. Nov. 2, 2023) (Gettleman, J.).

## Background

### I. Statutory And Regulatory History.

#### A. Federal Habeas Relief

The federal habeas corpus statute, 28 U.S.C. §§ 2241–55, provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]," 28 U.S.C. § 2242, and that district courts may grant writs of habeas corpus only "within their respective jurisdictions," 28 U.S.C. § 2241(a). For "core" habeas petitions—petitions challenging present physical confinement (like the petition involved here)—the Supreme Court has held that "there is generally only one proper respondent to a given prisoner's habeas petition," and that this singular proper respondent is the petitioner's "immediate custodian." *Padilla*, 542 U.S. at 434–35. Thus, well-settled practice dictates that the custodian is defined as "the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. As the Seventh Circuit has recognized, this is because the writ of habeas corpus acts not upon the petitioner, but upon the person who confines him in allegedly unlawful custody. *See Robledo-Gonzalez v. Ashcroft*, 342 F.3d 667, 673 (7th Cir. 2003) (citing *Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 494–95 (1973)). Courts should therefore be cautious not to "conflate the person responsible for authorizing custody with the person responsible for maintaining custody." *al-Marri v. Rumsfeld*, 360 F.3d 707, 711 (7th Cir. 2004).

#### B. The President's Proclamation

Tren de Aragua ("TdA") is a transnational criminal organization that originated in

Venezuela and has "conducted kidnappings, extorted businesses, bribed public officials, authorized its members to attack and kill U.S. law enforcement, and assassinated a Venezuelan opposition figure." Office of the Spokesperson, Dep't of State, *Designation of International Cartels* (Feb. 20, 2025). TdA has been designated a "foreign terrorist organization" by the Secretary of State. 90 Fed. Reg. 10,030 (Feb. 20, 2025). That designation reflects the Secretary's finding that TdA engages in "terrorist activity" or "terrorism" or "retains the capability and intent" to do so, and thereby "threatens the security of United States nationals or the national security of the United States." 8 U.S.C. 1189(a)(1), (d)(4).

On March 14, 2025, the President signed a proclamation, which was published on March 15, invoking his authorities under the AEA, 50 U.S.C. § 21, against members of TdA, *see* Proclamation No. 10,903 § 1 (Mar. 14, 2025), 90 Fed. Reg. 13,033 (Mar. 20, 2025) (hereinafter, "Proclamation"). Section 21 of the AEA provides:

> Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies.

50 U.S.C. § 21. The provision elaborates on related powers, including the power "to direct the conduct to be observed on the part of the United States, toward the aliens who become so liable"; the power to determine the "manner and degree of the restraint to which" the alien enemies "shall be subject and in what cases"; to "provide for the removal of those who, not being permitted to reside within the United States, refuse or neglect to depart therefrom"; and "to establish any other regulations which are found necessary in the premises and for the public safety." *Id.*

The Proclamation outlines the President's findings that TdA members meet the statutory criteria for removal under the AEA. The President found that TdA is "conducting irregular warfare and undertaking hostile actions against the United States." 90 Fed. Reg. at 13,033. The President also found that TdA and other criminal organizations have taken control over Venezuelan territory, resulting in a "hybrid criminal state." *Id.* Moreover, TdA is "closely aligned with" Maduro's regime in Venezuela, and indeed has "infiltrated" the regime's "military and law enforcement apparatus." *Id.* The resulting hybrid state, the President determined, "is perpetrating an invasion of and predatory incursion into the United States," posing "a substantial danger" to the Nation. *Id.*

Based on those findings, the President proclaimed that "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies" pursuant to 50 U.S.C. 21. 90 Fed. Reg. at 13,034. Further, "all such members of TdA are" "chargeable with actual hostility against the United States" and "are a danger to the public peace or safety of the United States." *Id.* The Proclamation adds that all such TdA members "are subject to immediate apprehension, detention, and removal." *Id.* To that end, the President directed the Attorney General, in consultation with the Secretary of Homeland Security, to "issue any guidance necessary to effectuate the prompt apprehension, detention, and removal of all Alien Enemies described" above. Aliens apprehended under the Proclamation may be detained until their removal, then may be removed to "any such location as may be directed" by the enforcing officers. *Id.*

TdA members remain deportable under other authorities, including under Title 8 of the United States Code as members of a foreign terrorist organization or otherwise. *See* 8 U.S.C. §§ 1182(b)(3)(B), 1227(a)(4)(B). But the Proclamation lets the President use a particularly

expeditious removal method for those found to present serious national-security threats.

### C.  The *J.G.G.* Case

On March 15, 2025, five Venezuelan nationals detained at an immigration detention center in Texas sued in the United States District Court for the District of Columbia to block the government from removing them under the Proclamation.  *See J.G.G. v. Trump*, No. 25-cv-766, Dkt. 1 (D.D.C. Mar. 15, 2025).  The detainees moved to certify a class of "[a]ll noncitizens who were, are, or will be subject to the Alien Enemies Act Proclamation and/or its implementation." *See id.* at ¶ 57.  The plaintiff detainees initially sought habeas relief as well as relief under the Administrative Procedure Act, but they dismissed their habeas claims almost immediately.  *See J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *18 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring).  The same day, the district court issued two TROs preventing the removal of the named petitioners and any members of a provisionally certified class of all aliens in custody "who are subject to" the Proclamation.  *Id.*  The government immediately asked the D.C. Circuit to vacate the TROs, but the court of appeals denied that motion.  *See id.*

On April 7, 2025, however, the Supreme Court vacated the district court's TROs.  *J.G.G.*, 145 S. Ct. at 1006.  The Court recognized that the AEA "largely precludes judicial review." *Id.* at 1005 (citation and brackets omitted).  But the Court held that an alien detained under the AEA is guaranteed "limited" judicial review as to "questions of interpretation and constitutionality" of the Act, as well as "whether he or she is in fact an alien enemy" subject to detention and removal under the statute.  *Id.* at 1006 (citation omitted).  And of particular importance here, the Court agreed with the government that such review "must be brought in habeas" in the "district of confinement."  *Id.*  Because the detainees had brought the wrong claims in the wrong court, the district court lacked the authority to issue the TROs.  *Id.*

## II. Factual And Procedural History

F.J.C.G. is a Venezuelan national who is currently in removal proceedings and is applying for asylum. *See* Pet. ¶¶ 10, 17. The Petition alleges the petitioner was initially "taken to the Broadview Processing Center in Broadview, Illinois," but "th[at] same day Petitioner was transferred to Dodge Detention Facility (DDF) in Juneau, Wisconsin." Pet. ¶ 16.[2] During the course of his removal proceedings, "Petitioner appeared for his Master Calendar Hearing visa WebEx before the Immigration Court in Chicago," and that "[t]he hearing was continued to April 24, 2025[.]" *Id.* at ¶ 18. Then, "on April 14, 2025[,] Petitioner was transferred from DDF to Broadview Processing Center," *id.* at ¶ 19, but this period was "brief[ ]" because he was, on that same day, "transported to Greene County Jail in Missouri and then Kay County Justice Facility in Oklahoma. He arrived at Kay County Justice Facility in Oklahoma," Taylor Decl. ¶ 5. "On April 15, 2025, Petitioner was transferred to Bluebonnet Detention Facility in Texas." *Id.* at ¶ 6.

The Petition was filed on April 15, 2025, *see* Dkt. 1, which asserts three grounds for habeas relief: (1) a claim arguing that F.J.C.G.'s detention pursuant to the AEA is unlawful under the Fifth Amendment's Due Process Clause, Pet. at ¶¶ 28–31; (2) a claim arguing that F.J.C.G.'s detention violates the Immigration and Nationality Act, 8 U.S.C. § 1229a(b)(1)(B) because he must be given a chance to examine the evidence against him during his removal proceedings, *id.* at ¶¶ 32–35; and (3) a claim arguing that F.J.C.G.'s removal prior to the conclusion of his removal proceedings violates § 1229a(c)(1)(A), *id.* at ¶¶ 36–43. Petitioner's motion was filed on April 16, 2025, Dkt.

---

[2] Such transfers of the petitioner to out-of-state facilities stem from the Illinois TRUST Act, which was enacted in 2017 to prohibit state law enforcement officials from participating in federal civil immigration enforcement. *See* TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017). The TRUST Act was also amended in 2021 by the Way Forward Act, to, *inter alia*, prevent state and local law enforcement officials from entering into agreements to detain individuals for federal civil immigration violations. *See id.* at 805/15(g). In combination, the Way Forward Act and the TRUST Act limit cooperation with federal enforcement in numerous ways.

7, and this court held an *ex parte* telephonic hearing the next day, Dkt. 19.  This court partially granted the requested TRO (preventing his removal from the United States).  Dkt. 20.  A status hearing was held on May 1, 2025, and this court extended the TRO until May 15, 2025.  Dkt. 34.

**Legal Standard**

Under Federal Rule of Civil Procedure 65, a district court may issue a temporary restraining order or preliminary injunction.  Here, F.J.C.G. seeks both a TRO and a preliminary injunction. "The standard for issuing a TRO is the same one that governs issuance of a preliminary injunction," *Inventus Power, Inc. v. Shenzhen Ace Battery Co., Ltd.*, No. 20 C 3375, 2020 WL 3960451, at *4 (N.D. Ill. July 13, 2020), which is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 690 (2008), and "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (cleaned up).  More specifically, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As the Seventh Circuit has explained, an "applicant must make a strong showing that he is likely to succeed on the merits." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). "[A] possibility of success is not enough. Neither is a 'better than negligible' chance." *Id.* Movants must also demonstrate clearly, and through specific factual allegations, that immediate and irreparable injury will result to them absent the order. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (citations omitted).  Only if the movant meets their burden of showing both a likelihood of success on the merits and an imminent risk of irreparable harm will courts then engage in further analysis. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

## Argument

**I.    Petitioner Has No Likelihood Of Success On The Merits Because This Case Must Be Dismissed For Lack Of Jurisdiction.**

As alluded to above regarding the Supreme Court's decision in *J.G.G.*, petitioner's motion fails on the merits because this court lacks jurisdiction where F.J.C.G. is not (and was not at the time the Petition was filed) detained in this district. *See J.G.G.*, 145 S. Ct. at 1006 (holding that because "[t]he detainees are confined in Texas . . . venue is improper in the District of Columbia" and that, "[a]s a result, the Government is likely to succeed on the merits of this action"). As in other cases before Article III courts of limited jurisdiction, the petitioner must come forward with "competent proof" supporting his jurisdictional allegations. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 237 (7th Cir. 1995); *see also Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). The Petition attempts to paper over the immediate custodian rule by conclusorily pleading that "[v]enue is proper because *today, April 14, 2025*, Petitioner is detained at Broadview Processing Center in Broadview, Illinois, which is within the jurisdiction of this District." Pet. ¶ 6 (emphasis added). But the Petition was not filed on April 14, 2025; it was filed on April *15*, 2025. *See* Dkt. 1. And on that day, the petitioner was in Texas. Not in this district. Taylor Decl. ¶ 6.

This is a problem because the Seventh Circuit has held that the only proper respondent to a habeas petition is the warden or immediate custodian of the facility where the petitioner is detained, and that the case must be brought in the proper district of the petitioner's confinement. *Kholyavskiy*, 443 F.3d at 949–51. No such immediate custodian is present here. *See* Taylor Decl. ¶ 6. Thus, because none of the respondents is petitioner's immediate custodian, this court lacks jurisdiction and the case should be dismissed under Federal Rule of Civil Procedure 12(h)(3).

The petitioner here asserts jurisdiction under the habeas statute pursuant to 28 U.S.C. § 2241. *See* Pet. ¶¶ 3, 5. However, the habeas statute clearly provides that federal judges are

entitled to issue writs of habeas corpus only "within their respective jurisdictions," and the writ "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him, and by virtue of what claim or authority if known." 28 U.S.C. §§ 2241(a), 2242, & 2243; *see also al-Marri*, 360 F.3d at 708. Moreover, the Supreme Court has ruled for over a century that a habeas petitioner's custodian is the person "'who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge.'" *Kholyavskiy*, 443 F.3d at 949 (quoting *Wales v. Whitney,* 114 U.S. 564, 574 (1885) (emphasis added)). Thus, in *Padilla*, the Court held that where there is a challenge to the present physical confinement, the immediate custodian rule should apply. 542 U.S. at 435. In other words, courts have reiterated that the default rule "in habeas challenges to present physical confinement — 'core challenges' — is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Kholyavskiy*, 443 F.3d at 952 (quoting *Padilla*, 544 U.S. at 444).

In applying *Padilla*, the Seventh Circuit arrived at the same jurisdictional conclusion in the immigration context. The *Kholyavskiy* court found, much like the petitioner in the instant case, that since petition for habeas corpus "attacks the constitutionality of his confinement while he was awaiting removal," and that his "excessive detention at Kenosha deprives him of his rights to substantive and procedural due process," Kholyavskiy did not name the "person who has the *immediate custody* of the person detained, with the power to produce the body of such party before the court or judge." *Kholyavskiy*, 443 F.3d at 953 (emphasis in the original) (quoting *Padilla*, 542 U.S. at 435). The same is true in the instant case where petitioner alleges unlawful confinement while awaiting for his ongoing removal proceedings to play out before an immigration judge, and he also has not named the person who has immediate custody and control over him.

10

The petitioner in the instant case presents the same type of claim before this court, and faces the same inevitable jurisdictional result: he has not named the proper respondents to each of his claims, and as such, under *Kholyavskiy*, they must be dismissed for lack of jurisdiction. Thus, applying the Seventh Circuit precedent to the instant case regarding where and whom to sue in a habeas corpus petition brought under 28 U.S.C. § 2241, the default rule is that one must (1) sue the actual custodian — the person in charge of the jail or prison — (2) in the district of confinement. *See al-Marri*, 360 F.3d at 708. Pursuant to the federal habeas statute, federal judges are entitled to issue writs of habeas corpus "within their respective jurisdictions," and the writ "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him, and by virtue of what claim or authority, if known." 28 U.S.C. §§ 2241(a), 2242, and 2243. Relatedly, and as the Seventh Circuit has explained: "Long ago the Supreme Court held that the phrase 'within their respective jurisdictions' in § 2241's predecessor limits proceedings to the federal district in which petitioner is detained." *al-Marri*, 360 F.3d at 709 (citations omitted). And the Seventh Circuit in *Kholyavskiy* again reiterated this point based on another underlying consideration: "To ensure a more even distribution among the federal districts, Congress has required that a habeas petition name the person in direct charge of the local penal institution." *Kholyavskiy* at 443 F.3d at 949 (citing *al-Marri*, 360 F.3d at 710).

With this backdrop in mind, and because the petitioner has named *no one* who has actual custody over him, the habeas petition must be dismissed for lack of jurisdiction. *Yacobo*, 2008 WL 907444, at *3. As the Seventh Circuit stated in *Kholyavskiy*: "Congress has provided that an application for a writ of habeas corpus shall allege, among other matters, the name of the person who has actual custody over" the petitioner. 443 F.3d at 948 (cleaned up). And if the writ is "granted by the district court, it 'shall be directed to the person having custody of the person

11

detained.'" *Id.* (quoting 28 U.S.C. § 2243) (citing *Robledo-Gonzales*, 342 F.3d at 673). Finally, this strict adherence to the habeas statute "fits within the logic of collateral relief" because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Kholyavskiy*, 443 F.3d at 949, (citing *Braden*, 410 U.S. at 494–95). That is, when the relief is granted, the person who can effectuate the relief is the named respondent, the immediate custodian, not a remote official. In this case, none of the named respondents maintain custody over the petitioner, meaning it is impossible for the court here to issue the writ as to the proper person (that is, the actual immediate custodian of F.J.C.G.). Thus, without naming the proper respondent, there is no effective relief that the court may grant to the petitioner regarding those who allegedly hold him in "unlawful custody," and as such, the case must be dismissed for lack of jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## II.     There Is No Imminent, Irreparable Harm Here.

This court should also deny F.J.G.C.'s motion because he cannot carry his burden to show that he is likely to suffer imminent, irreparable harm. *See Int'l Union, Allied Indus. Workers of Am., AFL–CIO v. Local Union No. 589*, 693 F.2d 666, 674 (7th Cir. 1982). This is because, as someone currently detained under the AEA, the Supreme Court has already enjoined his removal from this country. *See A.A.R.P. v. Trump*, 145 S. Ct. 1034 (2025) ("The Government is directed not to remove any member of the putative class of detainees from the United States until further order of this Court."). That decision and order is directly relevant here because it covers the petitioner by applying to members of a putative class of aliens who are or will be detained in the Northern District of Texas under the AEA. More specifically, the Court's order covers Venezuelan nationals detained at the Bluebonnet Detention Center who are unlawfully present in the United States and subject to removal under other authorities, but whom the government has determined are TdA members and thus subject to removal pursuant to the AEA. *See W.M.M. v.*

*Trump*, No. 25-cv-59, 2025 WL 1358476, at *2 (N.D. Tex. May 9, 2025). It is difficult to understand why petitioner insists that this court's injunction must be maintained when the Supreme Court has already issued a similar order preventing his removal from this country.

### III.    The Balance of Equities and the Public Interest Favor Respondents.

The balance of equities and public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A court "'should pay particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Petitioner's motion asserts irreparable harm because he fears being returned to Venezuela (from which he now is seeking asylum), but he also fears being sent to El Salvador (where presumably he would at least be safe from the Venezuelan regime). But he provides *nothing* to show that he could be sent to either of those countries. Moreover, "[c]ontrol over immigration is a sovereign prerogative" reserved for the political branches and not the courts. *El Rescate Legal Servs., Inc. v. EOIR*, 959 F.2d 742, 750 (9th Cir. 1992). This is also why the public interest in enforcement of immigration laws (such as the AEA) is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976). Indeed, granting petitioner with the extraordinary relief he seeks will undermine the President's Article II power to conduct foreign affairs. The public interest would not be served by the court commandeering this power by micromanaging where (and when) removals of enemy aliens occur.

Finally, this court may grant preliminary injunctive relief only if the petitioner "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Rule 65(c) thus makes some form of security mandatory as a general rule in the Seventh Circuit, *see Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994), although a court may forgo

a bond when "a bond that would give the opposing party absolute security against incurring any loss from the injunction would exceed the applicants ability to pay . . . ." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). The risk of harm to respondents here is not insubstantial, and if the court grants his motion, respondents request that the court require that F.J.C.G. post a security bond during the pendency of the court's order, in the event it is later determined that respondents were (and have been) wrongfully enjoined. *See id.* (reasoning that the government "may lose money as a result of the" preliminary injunction obtained against it).

**IV.    Alternatively, This Court Should Transfer This Matter To The Northern District Of Texas.**

As an alternative to dismissal, the court should transfer this matter under either § 1406(a) (that is, to a district in which it could have been filed), or under 28 U.S.C. § 1404(a).[3] Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the "broad discretion" of the court. *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In deciding a motion to transfer venue, courts must weigh multiple factors, including (1) the plaintiff's choice of forum; (2) the convenience of the parties and witnesses; (3) the location of the evidence; and (4) local interest in the controversy. *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 991 (N.D. Ill. 2012) (similar). Here, this action could have been brought in the Northern District of Texas since petitioner is (and was) detained there.

---

[3] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

14

As for the interest-of-justice factors, "when the material events giving rise to the dispute occur outside the chosen forum, [the] plaintiff's preference [for venue] has minimal value." *Schell v. Aldi, Inc.*, No. 21 C 6654, 2022 WL 900212, at *2 (N.D. Ill. Mar. 28, 2022). That principle is apt because the Petition admits that F.J.C.G. was only ever briefly detained within this judicial district, *see* Pet. ¶¶ 16, 19; *see also* Taylor Decl. ¶¶ 5–6, which means that a substantial portion of the events challenged over his detention never took place (or will not take place) here. *See, e.g.*, *Lamont v. Haig*, 590 F.2d 1124 (D.C. Cir. 1978). In addition, the ease of access to evidence weighs in favor of transfer, as does the convenience of the parties and potential witnesses. *See Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 868 (7th Cir. 2015); *Research Automation, Inc. v. Schrader-Bridgeport, Int'l Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). And given that another, extremely similar case (and putative class action) is being litigated in the Northern District of Texas right now, *see W.M.M.*, 2025 WL 1358476, at *2, there is greater ease of access to evidence in that district. This case should thus be transferred to the Northern District of Texas.

## Conclusion

For the foregoing reasons, the petitioner's motion should be denied.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
    JOSHUA S. PRESS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-7625
    joshua.press@usdoj.gov

15